**June R. CONWAY, Plaintiff,**

v.

**ALFRED I. DuPONT SCHOOL DISTRICT et al., Defendants.**

Civ. A. No. 4017.

United States District Court, D. Delaware.

Oct. 27, 1971.

Nicholas H. Rodriguez, of Schmittinger & Rodriguez, Dover, Del., for plaintiff.

William Poole, of Potter, Anderson & Corroon, Wilmington, Del., for defendants.

## OPINION

STEEL, District Judge:

Plaintiff is a nurse formerly employed by the defendant Alfred I. DuPont School District. The defendants are the school district, the superintendent and members of the Board of Education of the district, the individuals having been sued in both their official and individual capacities. The complaint alleges that defendants have violated her substantive and procedural due process and equal protection of the laws rights under the Fourteenth Amendment of the Constitution, and hence she is entitled to relief under the Civil Rights Act, 42 U.S.C. § 1983. These violations are alleged to have occurred when after two successive one-year terms of employment, and

prior to the expiration of the second term, defendants acting under color of statutes, regulations, customs or usages of the State of Delaware notified plaintiff that she would not be reemployed for the ensuing third year. At the time, plaintiff was a probationary employee without tenure by virtue of contract, statute, or otherwise. Plaintiff asks for an order compelling reinstatement of her former position and for compensatory and punitive damages.

The case comes before the Court upon the motion of defendants for summary judgment alleging that no genuine issue of material fact exists and that defendants are entitled to judgment as a matter of law. Pertinent to the resolution of the motion is the unverified complaint and answer, depositions and stipulations of record.

Jurisdiction is alleged to exist under 28 U.S.C. §§ 1343(3) and (4). Since, as later appears, the case will have to be tried, no disposition will be made of the jurisdictional question until all the facts have been developed. As to jurisdiction, see discussion in Tichon v. Harder, 438 F.2d 1396 (2nd Cir. 1971) and National Land and Investment Company v. Specter, 428 F.2d 91, 98–100 (3d Cir. 1970).

■ Preliminarily, it should be noted that the action against the defendant school district must be dismissed both in its damage and injunctive aspects. In Mathias v. New Castle County Vocational Technical School District, C.A. No. 4073, (D.Del. filed Sept. 22, 1971) Judge Stapleton said:

"[T]he defendant school district asserts that it is not a 'person' within the meaning of Section 1983 and that, accordingly, this Section does not create a cause of action against it for either damages or injunctive relief. I agree.

It has been consistently held upon the authority of Monroe v. Pape, 365 U.S. 167, [81 S.Ct. 473, 5 L.Ed.2d 492] (1961) that Section 1983 does not create a cause of action for damages against a school district. Harvey v.

Sadler, 331 F.2d 387 (9th Cir. 1964); Henson v. City of St. Francis, 322 F. Supp. 1034 (E.D.Wis.1971); Martin v. Davison, 322 F.Supp. 318 (W.D.Pa. 1971). While there is some disagreement on the point elsewhere, it is also established in this court that Section 1983 does not create a cause of action against a public body for injunctive relief. Shellburne, Inc. v. New Castle County, 293 F.Supp. 237, 240–241 (D. Del.1968)."

■ Insofar as the individual defendants are sued in their official capacity, the complaint fails to state a claim against them for damages. In Mathias v. New Castle County, *supra*, Judge Stapleton said:

"Defendants also assert that the rationale of Monroe v. Pape bars plaintiff's claim for damages against the individual defendants in their official capacities. The reason for joining these defendants in this capacity is not apparent to me. However, if by proceeding in this manner plaintiff seeks to recover a money judgment for which the school district would be responsible, I conclude that Monroe v. Pape bars the relief he seeks. Bennett v. Gravelle, 323 F.Supp. 203 (D. Md.1971); Westberry v. Fisher, 309 F.Supp. 12 (D.Me.1970)."

Judge Stapleton stated that this same principle was applicable to defeat plaintiff's claim for back pay:

"While there is authority to the contrary, I believe this conclusion applies to plaintiff's claim for back pay. Westberry v. Fisher, *supra*, [309 F. Supp.] p. 20. Monroe v. Pape stands for the proposition that Congress did not intend to subject the treasuries of political subdivisions to the burden of damage claims arising from violations of constitutional rights. A judgment directing 'back pay' for services not in fact rendered seems to me no less burdensome that [sic] a judgment for any other type of damages."

Pertinent also to plaintiff's claim for monetary relief against the individual

defendants in their official capacity is the fact that the complaint contains no allegation that their failure to renew the plaintiff's contract was motivated by bad faith. Judge Stapleton considered this a significant factor, saying:

"The individual defendants further assert that plaintiff's claim against them in their individual capacities for damages must be dismissed. The proposition of law relied upon is that public officials who exercise discretion in the performance of their duties have a qualified privilege which protects them against liability arising from acts done by them in good faith in the performance of their official duties. Pierson v. Ray, 386 U.S. 547, [87 S.Ct. 1213, 18 L.Ed.2d 288] (1967); Shellburne, Inc. v. New Castle County, *supra*; Shellburne, Inc. v. Roberts, Del., 224 A.2d 250 (Sup.Ct.1966); 3 Davis, Administrative Law Treaties, § 26.06 (1958); Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209, 221–222 (1963); Note, Doctrine of Official Immunity Under the Civil Rights Act, 68 Harv.L.Rev. 1229, 1238–1240 (1955). I concur in this statement of the law."

From what has been said it is apparent that the action against the individuals in their official capacity must be dismissed insofar as it seeks dollar relief.

Since the complaint fails to allege any act of wrongdoing on the part of the individual defendants in their non-official capacity, the action against them in this respect must also be dismissed.

Plaintiff's only remaining cause of action is that which lies against the individual defendants in their official capacity and only then within the operative limits of injunctive relief.

The complaint charges that the refusal of defendants to reappoint plaintiff to her former position of school nurse for the school year 1970–1971 was without reason or justification of any sort and was arbitrary, capricious, unreasonable and discriminatory. For that reason, it is alleged to be in violation of plaintiff's rights of substantive due process under the Fourteenth Amendment. It is true that the formal notice of April 27, 1970 from Dr. Farrar to plaintiff notifying her that her contract would not be renewed assigned no reasons for defendants' action (Dx 5). On the same date, however, plaintiff was given a "Teachers Evaluation Summary" which stated that plaintiff was "not well suited to elementary school nursing" and that the major area needing improvement was "relationships with staff, students and parents". The summary also stated that she was "not recommended for re-employment". (Dx 4). Earlier, on March 17, 1970, Mr. Gray had notified plaintiff in writing that he was not going to recommend the renewal of her contract because:

"I continue to feel that the relationship that exists between you and our school staff substantially interferes with the effective performance of your duties." (CD 27)

Without passing upon whether the information thus imparted to plaintiff was sufficiently detailed to meet the needs of procedural due process, from the standpoint of substantive due process the reasons given to plaintiff for refusing to extend her employment was the simple one of unsuitability for the job. As to this the record is uncontroverted.

Plaintiff says in her brief that she "suspected" (Pl. Br. p. 8) that the reasons thus given to her were not the real reasons for the defendants' refusal to re-employ her. After stating, erroneously, that no reasons were given for the non-renewal, plaintiff asserts: (Pl. Br. p. 8)

"Only two reasons can be suspected. First, she had asked for a transfer to a new school and she had been told by Mr. Gray that if she requested a transfer he would fire her. Second, when she went to discuss her problems with Dr. Farrar, Mr. Gray's supervisor, she aggravated Mr. Gray to the point where he again told her he was going to fire her under the circumstances."

The bases for these suspected "reasons" were stated in plaintiff's deposition. There she said that after Mr. Gray learned that she had discussed with Dr. Farrar certain of her nursing problems, Mr. Gray had said "under the circumstances he would fire me," and "prior to that [he said] that he would do so if I insisted on a transfer". (CD 21). This testimony must be accepted as true in determining defendants' motion for summary judgment, although Mr. Gray denied that he made the statements which plaintiff attributed to him (CD 46).

■ It need not now be determined whether the refusal of defendants to give plaintiff a new contract because she had gone over Mr. Gray's head to talk to Dr. Farrar constituted an impermissible interference with her right of free speech under the First Amendment, as plaintiff argues,[1] or whether it was outside the protection of that Amendment since the discussion with Dr. Farrar was not public but purely inter-organizational, see Pickering v. Board of Education, 391 U. S. 563, 570, n. 3, 88 S.Ct. 1731, 20 L.Ed. 2d 811 (1968); for it is clear on the present record that plaintiff was within her rights in seeking to obtain a transfer. If in point of fact this latter circumstance (notwithstanding Mr. Gray's denial) was the real reason for the defendants' refusal to renew her contract, then a serious legal question arises whether defendants' action was not so arbitrary, unreasonable and discriminatory as to violate substantive due process and confer jurisdiction on the Court to grant relief under the Civil Rights Act. A determination of these issues may or may not require resolution after trial, depending upon how the facts develop. This is not to say that summary judg-

ment will never be appropriate in a case like the instant one, but only that in the light of the present record and in view of the diversity of judicial views on the constitutional issues involved, the present case is one in which the granting of summary judgment would be particularly inappropriate. See 6 J. Moore, Federal Practice, ¶ 56.17[10] at 2506 (2d ed 1953).

The complaint likewise charges that plaintiff has been denied procedural due process under the Fourteenth Amendment by the refusal of defendants to reappoint her without providing her with a fair and impartial hearing. In the first place, the record fails to reveal that plaintiff ever asked for such a hearing.[2] The complaint does not pray for an administrative hearing before any educational body. It seeks only reinstatement of plaintiff to her former position, reimbursement for loss of salary, and damages. At the argument on defendants' motion, plaintiff agreed that if this case should be tried and the question resolved whether her non-employment was in violation of the Civil Rights Act all of her rights would be preserved.

The third charge in the complaint is that plaintiff has been denied due process and equal protection of the law under the Fourteenth Amendment because defendants have failed to apply any recognized or ascertainable standards in failing to renew her contract. This can be dealt with, if need be, after the case has been tried.

The defendants' motion for summary judgment will be granted as to all defendants, except that the motion is denied with respect to plaintiff's claim for injunctive relief against the individual defendants in their official capacities.

---

1. No violation of a First Amendment right was alleged in the complaint.

2. The request in plaintiff's letter of May 4, 1970, to Dr. Biggs falls short of being such a request. It says: (Dx 6)

"Granted that I have no statutory or contractual right to demand a hearing concerning the allegations on which this attempt to terminate my services was based, I would respectfully suggest that you acquaint yourself with the facts that are involved."