**Charles H. CHAUDOIN, Plaintiff,**

v.

**Clarence F. ATKINSON, Jr., Defendant.**

**Civ. A. No. 4197.**

United States District Court, D. Delaware.

April 11, 1975.

Sheldon N. Sandler of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

Alan J. Hoffman, Asst. U. S. Atty., Wilmington, Del., Susan Engelman, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

STAPLETON, District Judge:

In its Opinion of February 11, 1975, this Court held (1) that defendant could amend his answer to assert a defense of official immunity; (2) that the standard of official immunity in this Circuit was that announced in *Fidtler v. Rundle,* 497 F.2d 794 (3rd Cir. 1974); (3) that nothing decided by the Court of Appeals in this case was inconsistent with the existence of official immunity as measured by the *Fidtler* standard; (4) that plaintiff should be given an opportunity to file affidavits in opposition to defendant's motion for summary judgment on official immunity grounds.

Following this Court's decision, plaintiff advised the Court that, in light of the standard announced in the February 11th Opinion, he did not desire to file affidavits. Before the Court had decided defendant's motion for summary judgment, however, the Supreme Court of the United States decided *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Since the *Wood* case discussed official immunity at some length, albeit in the context of the amenability of school board members to Civil Rights Act suits, the court solicited written comments from the parties regarding that decision. Gen. Atkinson's response took the position that the *Wood* case is not relevant here since its definition of the scope of official immunity is applicable only in cases where the plaintiff's claim is based on the Civil Rights Act. Plaintiff Chaudoin's response was to suggest that this case be certified for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). For the reasons hereinafter set forth, I conclude: (1) that the *Wood* opinion is relevant to this case and (2) that an interlocutory appeal on the basis of the present record would not "materially advance the ultimate termination of the litigation."

Gen. Atkinson argues that, in so far as official immunity is concerned, cases brought under the Civil Rights Act are governed by *Wood* while other types of

cases, like the instant one, are governed by *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) and its progeny. It is true that the Supreme Court in *Wood* did not purport to overrule the *Barr* case. It well may be that *Barr* retains its vitality in situations like that involved in *Barr* where the plaintiff was asserting a traditional common law tort claim (i. e. defamation). We need not decide that question, however, because whatever may be the rule in such cases, the court can find no logical basis for distinguishing the situation before this Court from that before the court in *Wood.*

■ This is not a traditional common law tort action. Chaudoin's claim for damages has always been based on the theory that he was deprived of his job through arbitrary government action in violation of substantive due process.[1] The complaint was not expressly framed under the Civil Rights Act, apparently because plaintiff's counsel was of the view that Gen. Atkinson did not act under color of *state* law in firing Chaudoin. The complaint does, however, expressly allege that Chaudoin's dismissal was in violation of his right to substantive due process under the Fifth Amendment of the United States Constitution.[2] This Court can see no logical basis for holding that a federal official who violates a person's right to due process under the Fifth Amendment of the Constitution should be entitled to immunity of greater scope than a state official who violates the same citizen's right to due process under the Fourteenth Amendment. A similar view has been expressed by others, including the Third Circuit Court of Appeals. *See, e. g., Bethea v. Reid,* 445 F.2d 1163, 1166 (3rd Cir. 1971); *Bi-*

*vens v. Six Unknown Agents,* 456 F.2d 1339, 1346–7 (2nd Cir. 1972); *Carter v. Carlson,* 144 U.S.App.D.C. 388, 447 F.2d 358, 371 (1971) (Nichols, J., concurring); *Anderson v. Nosser,* 438 F.2d 183, 205 (5th Cir. 1971) (Bell, J., concurring), *modified,* 456 F.2d 835 (5th Cir. 1972) (en banc).

■ Having concluded that the *Wood* standard should be applied in this case, it is apparent that that portion of this Court's opinion of February 11, 1975 dealing with immunity on a substantive level cannot stand. *Fidtler* is irreconcilably at odds with *Wood,* and this Court's Opinion, being based on *Fidtler,* must necessarily be altered.

Given the tortuous history of this case, the Court wishes it could take the *Wood* holding, apply it to the record in this case, and presently terminate the litigation at the trial level, one way or the other. I have reluctantly concluded, however, that the current record does not provide an adequate basis for decision under the *Wood* standard. Accordingly, further factual development of the record is required and thus an interlocutory appeal would not be appropriate.

■ In the *Wood* case the Supreme Court held, contrary to the teaching of *Fidtler,* that subjective good faith is an element of the official immunity defense available to those public officials who exercise discretionary functions. Thus, one question now before this Court is whether Gen. Atkinson, when he discharged plaintiff, was "acting sincerely and with a belief that he [was] . . . doing right."[3] What was in Gen. Atkinson's mind at that time is something peculiarly within his knowledge and plaintiff has expressed the understandable de-

---

1. The Third Circuit held that there were two bases for jurisdiction over this suit. There was mandamus jurisdiction under 28 U.S.C. § 1361 and federal question jurisdiction under 28 U.S.C. § 1331(b), the latter by virtue of Chaudoin's claim of a substantive due process violation.

2. The question of whether Gen. Atkinson acted under color of state or federal law when he fired Chaudoin is an arguable one. Compare

*Lasher v. Shafer,* 460 F.2d 343 (3rd Cir. 1972); *and see Syrek v. Penna. Air Nat'l. Guard,* 371 F.Supp. 1349 (W.D.Pa.1974). Indeed, this case forcefully illustrates the arbitrariness of any rule which provides a different standard of immunity depending on whether the plaintiff's rights under the United States Constitution have been violated under color of state or federal law.

3. 95 S.Ct. at 1000.

sire to "cross-examine" Gen. Atkinson before the Court decides his motion for summary judgment. While plaintiff has not expressly invoked Rule 56(e), this is the type of situation in which that rule contemplates that a party in plaintiff's position will be given an opportunity to further develop the record.

There is, however, a question raised by the *Wood* opinion which, if answered in Chaudoin's favor, would make it unnecessary to provide this opportunity. In *Wood,* the Supreme Court held that the official immunity defense has an "objective" as well as a "subjective" component. There the court stated that the immunity doctrine protected officials only for "action taken . . . within the bounds of reason under all of the circumstances."[4] In the course of its opinion in the case at hand, the Third Circuit stated "[t]here seems to be no reasonableness to Gen. Atkinson's action."[5] Thus, an argument could be made that the Third Circuit had in effect determined that Gen. Atkinson is not entitled to the *Wood* immunity defense. The context in which these references to "reasonableness" were made differ markedly, however, and I conclude that this argument is unsound.

In *Wood,* the Supreme Court reaffirmed a qualified immunity for officials exercising discretionary functions. Such immunity is necessary, the court explained, in order to permit officials to make decisions and act in pursuit of the public interest uninhibited by fear of personal liability. 95 S.Ct. 992. The public interest does not require such protection, however, where the official has acted with malice or with the subjective intent of depriving the plaintiff of his constitutional rights. Furthermore, the majority went on to hold, the law of official immunity must not encourage or reward ignorance on the part of public officials of the constitutional rights of others. The court stated this concept in the context of a school board member as follows:

> The disagreement between the Court of Appeals and the District Court over the immunity standard in this case has been put in terms of an "objective" versus a "subjective" test of good faith. As we see it, the appropriate standard necessarily contains elements of both. The official must himself be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives than by the presence of actual malice. To be entitled to a special exemption from the categorical remedial language of § 1983 in a case in which his action violated a student's constitutional rights, a school board member, who has voluntarily undertaken the task of supervising the operation of the school and the activities of the students, must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights of his charges. . . [W]e hold that a school board member is not immune from liability for damages under § 1983 if he knew *or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. . . . (Emphasis supplied)

Accordingly, there can be no immunity, even where the official has acted without intending to deprive the plaintiff of his constitutional rights, if a reasonable man in the defendant's position would have realized that his action would have that effect.

---

4. *Id.* at 1000.

5. 494 F.2d 1323 at 1331.

The "reasonableness" reference in *Wood* thus pertains to the requirement that a public official take reasonable care to avoid violation of the constitutional rights of others. The references to "reasonableness" and "unreasonableness" in the Third Circuit's opinion in this case, however, have a very different connotation. When the court found that there was "no reasonableness to Gen. Atkinson's action" it was holding that he "abused his discretion." I think it highly unlikely that the *Wood* court intended to bar immunity in every case where the defendant is found to have abused his discretion. Nor do I believe that the *Wood* court intended to preclude the possibility of immunity in every instance where an official has made a decision found by the court to have been arbitrary and, accordingly, in violation of due process. The opinion makes it clear that protection must be afforded in the public interest even though the official has made a mistake; the protection falls only where there are mistakes which are *unreasonable* under all of the circumstances."

In short, it seems to the Court that this could turn out to be a situation in which a denial of immunity would subvert the policy underlying the official immunity doctrine without serving the purpose of the "objective" component of the *Wood* standard. Further record development is in order. I will meet with counsel to determine a schedule for further proceedings in this case.